IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROY LEE BLACK, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:17CV839–HEH
)
SHERIFF C.T. WOODY, JR., *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION
(Granting Defendants' Motions to Dismiss)

This is essentially an action filed against C.T. Woody, Jr., Sheriff of the City of Richmond ("Sheriff Woody"), and a number of his deputies, for failure to obey an order of the Richmond City Circuit Court ("Circuit Court"). Plaintiff Roy Lee Black ("Black") maintains that despite the unequivocal order of the Circuit Court, he was "unlawfully confined and falsely imprisoned, against his will, within the 'Justice Center' [from March 7, 2016] until April 1, 2016, without any sufficient legal excuse or legal justification [in] disregard [of] the Court's Order." (Am. Compl. ¶ 19, ECF No. 4.) Despite being statutorily ineligible to serve his sentence in the Home Electronic Incarceration Program ("HEI"), he maintains that he was falsely imprisoned and that his civil rights were violated by Sheriff Woody's refusal to place him in that program. This lawsuit seeking $2,350,000 in damages ensued.

The case is presently before the Court on Sheriff Woody, Lt. Colonel Carol Dabney ("Lt. Colonel Dabney"), Deputy Abraham Bul ("Deputy Bul"), and Deputy

Rashawn Gray's[1] ("Deputy Gray") (collectively, "Defendants") Motions to Dismiss asserting that the Amended Complaint fails to state an actionable claim and, alternatively, that the Defendants are entitled to qualified immunity on the constitutional claims. All parties have filed memoranda of law supporting their respective positions. This Court will dispense with oral argument because it would not aid in the decisional process at this stage. The operative facts are not in dispute—only the duties arising from the Circuit Court's order.

This Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) is both informed and constrained by the well-pleaded facts contained in the Amended Complaint. The immediate task at hand is to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the plaintiff's well-pleaded allegations are taken as true and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Legal conclusions, however, enjoy no such deference by the reviewing court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive Rule 12(b)(6) scrutiny, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not assert "detailed factual allegations," it must contain "more than labels

---

[1] Plaintiff's case caption lists Rashawn Gray, Sergeant Gray, and Deputy Gray as separate Defendants, and the CM/ECF docketing system reflects this captioning. However, it is clear from Plaintiff's Amended Complaint that these names represent one individual. (Am. Compl. ¶ 10.)

2

and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *see also Iqbal*, 556 U.S. at 678. This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). With respect to Black's state law claim of false imprisonment, this Court applies the substantive law of the Commonwealth of Virginia while applying the procedural law of the Court of Appeals for the Fourth Circuit in weighing the factual sufficiency of the pleadings.

Net of legal conclusions, the Amended Complaint alleges that Black was convicted on December 17, 2015 in the Richmond City Circuit Court of unlawful wounding, a felony under Virginia law. *See* Va. Code Ann. § 18.2-51. On March 1, 2016, Black was sentenced to five years of incarceration with the Virginia Department of Corrections. The Circuit Court suspended four years of that sentence for a period of five years, subject to several conditions. Aside from a general good behavior requirement, the Circuit Court also ordered that "the active sentence shall be served on Home Electronic Incarceration Program," that Black "undergo a substance abuse assessment [] and enter a treatment and/or educational program as directed by the Department of Corrections," and that he be placed on supervised probation upon completion of his term of incarceration. (Am. Compl., Ex. F.) The Circuit Court's Order also directed that "[t]he defendant shall participate in the Sheriff's Work Release Program." (*Id.*) It further directed Black to

3

"report to the Sheriff's Office in the John Marshall Courts Building on March 7, 2016, at 9:00 a.m. to be transported to the Richmond City Jail to begin serving his sentence." (*Id.*)

In addition to the Circuit Court's Sentencing Order ("Sentencing Order"), the clerk of the court also conveyed an Inmate Information Transmittal Form ("Transmittal Form") to the Sheriff's Office which essentially tracked pertinent provisions of the Sentencing Order. Black highlights the bottom of the Transmittal Form wherein the word "NO" is circled adjacent to the language "Remanded to Custody of Sheriff."[2]

Soon after reporting to the Justice Center as directed, Black informed Lt. Colonel Dabney and Deputy Gray, among others, that the Circuit Court had ordered him to serve his sentence on the HEI program rather than confinement in the city jail. According to the Amended Complaint, both Lt. Colonel Dabney and Deputy Gray agreed to "'look into it,' but never got back to Plaintiff." (Am. Compl. ¶ 20.) Black contends that he reported what he believed to be his improper confinement to "numerous other deputies and employees of [Sheriff] Woody" including Deputy Bul. (*Id.* at ¶ 21.) Black was held in custody until April 1, 2016, "despite Plaintiff's protestations that he should not be incarcerated at the 'Justice Center,' without investigation and without affording Plaintiff due process." (*Id.*) He closes with the assertion that no employee of the Sheriff's Office communicated "to the Richmond City Circuit Court or the presiding Judge their unwillingness or inability to comply with the Court's unambiguous Sentencing Order of

---

[2] This notation must be read in context. The Inmate Information Transmittal Form reflects the judgment of the Circuit Court pronounced on March 1, 2016. The Transmittal Form also reflects, as did the Court's Order, "delayed reporting 3-7-16 9 AM JMCC sheriff's dept." (Am. Compl., Ex. G) Obviously, if Black was allowed to self-report on March 7, 2016, he was not remanded to the custody of the Sheriff at the close of the hearing on March 1, 2016.

March 1, 2016. Instead, Defendants, and their agents, employees, and servants, elected to just disregard it." (*Id.* ¶ 23.)

Black's Amended Complaint casts a wide net encompassing an expansive range of Sheriff's Office personnel to whom he protested what he considered to be his unlawful confinement. Although Black initiated no legal action to clarify the conditions of his confinement,[3] his claims are premised on the notion that his verbal complaints triggered a duty on the part of correctional personnel to do so. In his view, their failure to intervene on his behalf implicated a liberty interest in violation of the Due Process Clause of the Fourteenth Amendment. A careful review of due process jurisprudence in the Fourth Circuit and Commonwealth of Virginia fails to unearth any such duty. In fact, the Fourth Circuit has specifically held that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). *See also Baker v. McCollan*, 443 U.S. 137, 145 (1979) (due process does not require an independent investigation of every claim of innocence).

No reasonable construction of the Sentencing Order supports the contention that Sheriff Woody had the authority to release Black from custody. To the contrary, the Sentencing Order specifically remanded Black into the Sheriff's custody for one year. It directed Black to report to the Sheriff's Office on March 7, 2016 to be transported to the

---

[3] The Sentencing Order clearly reflects that Black was represented by counsel. (Am. Compl., Ex. F.) Conspicuously absent from the Amended Complaint is any mention of action by counsel to address Black's concerns.

Richmond City Jail to begin serving his sentence. It also authorized him to participate in the Sheriff's Work Release Program. (Am. Compl., Ex. F.)

Even if Black statutorily qualified for the HEI program, which he did not under Va. Code Ann. § 53.1-131.2, he would still be in the constructive custody of the Sheriff who would have no lawful authority to release him even if the Sheriff believed he was improperly confined. Moreover, nothing in the Circuit Court's Order directed Sheriff Woody to place Black in the HEI program forthwith, even assuming eligibility.

Black's alleged due process violation bypasses the operative language of § 53.1-131.2. While the sentencing court retains authority under that section to remove a person from the HEI program, placement of a detainee into the program clearly lies exclusively within the sheriff's discretion under that statute. Furthermore, it is important to note that because Black was convicted of unlawful wounding, a felony under Va. Code Ann. § 18.2-51, as a matter of law he was ineligible to serve his sentence in the HEI program. Although the Sentencing Order admittedly creates some ambiguity, when viewed in the context of § 53.1-131.2, the directive that Black serve his sentence under the HEI program appears to be hortatory—in other words, directing Black's participation in the program if deemed eligible by the Richmond City Sheriff's Office.[4]

Black's second claim in his Amended Complaint is equally unsupported by precedent or sound logic. He alleges that all named Defendants "restrain[ed] Plaintiff's physical liberty between March 7, 2016 and April 1, 2016 without any sufficient legal

---

[4] In his opposition memorandum, Black appears to concede that he was ineligible for the HEI program.

6

excuse or adequate legal justification by both physical restraint and the threat of such restraint, by both fear and force." (Am. Compl. ¶ 33.) He seeks $2,350,000 in compensatory and punitive damages from Defendants for keeping him "incarcerated without any sufficient legal excuse or adequate legal justification." (*Id.* at ¶ 35.) The authority Black provides to support his contention that Sheriff Woody, or his deputies, had a legal obligation to address Black's concerns with the Circuit Court, or perhaps release him from custody, is scant and unilluminating. Black fails to offer any factual basis to support his claim of atypical and significant hardship which would give rise to due process protection. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Black's claim of false imprisonment is moored to the law of the Commonwealth of Virginia. The theory underlying his revisionist claim appears to be that because the Sentencing Order contained a provision directing Sheriff Woody to carry out the imposition of sentence in a manner prohibited by Virginia law, the sentence imposed was void ab initio. A careful reading of the authorities cited by Black does not support his argument. In *Burrell v. Commonwealth*, the Supreme Court of Virginia "adopted the rule that a sentence imposed in violation of a prescribed statutory range of punishment is void ab initio. 283 Va. 474, 480 (2012). The sentence imposed in the immediate case was squarely within the statutory range of punishment prescribed by Virginia law. The only facet at issue was the method of service of the sentence, which is the province of the Sheriff or the Virginia Department of Corrections. As the Virginia Court of Appeals emphasized in *Pilson v. Commonwealth*, "[a]s an independent constitutional officer, the

sheriff's authority under [§ 53.1-131.2(c)] does not depend upon prior authorization from the sentencing order. Whatever authority the sheriff may have, it comes not from the sentencing order but from subsection C of the statute." 52 Va. App. 442, 444–45 (2008). Although the Sentencing Order clearly authorized Sheriff Woody to place Black on the HEI program, only the Sheriff had the statutory authority to do so.

Sheriff Woody, as well as his deputies, were acting under color of law in carrying out the Circuit Court Judge's Order to take Black into custody to serve his sentence. Since Sheriff Woody clearly had adequate legal justification to assume custody of Black, his claim of common law false imprisonment fails as a matter of law.

Assuming *arguendo* that Black was able to make a threshold showing of a colorable due process violation by Sheriff Woody and the named deputies, the doctrine of qualified immunity would clearly shield them from liability. Positing further that this Court found the Circuit Court's Sentencing Order to be sufficiently ambiguous to warrant further inquiry on Sheriff Woody's part, the Amended Complaint, taken at its best light, fails to reveal a violation of a clearly established right to Black's participation in the HEI program or his release from custody. As the United States Supreme Court counseled in *Butz v. Economou*, qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law." 438 U.S. 478, 507 (1978); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions. *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987). The

protection extends to "all but the *plainly incompetent or those who knowingly violate the law.*" *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (emphasis added). "Indeed, as we have emphasized repeatedly, '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (alteration in original) (quoting *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998)).

As the United States Court of Appeals for the Fourth Circuit commented in *Doe v. Broderick*, "in gray areas, where the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that this not clearly forbidden—even if the action is later deemed wrongful." 225 F.3d 440, 453 (4th Cir. 2000) (citations omitted). Thus, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (emphasis added). "In other words, the existing precedent must have placed a statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (internal quotation marks and citation omitted). Furthermore, "[t]he unlawfulness of the official's conduct must be 'apparent' in 'light of preexisting law.'" *Booker*, 855 F.3d at 538 (quoting *Anderson*, 483 U.S. at 640). An official will not be held liable when the landscape provides no "fair warning" that his actions were unlawful, much less unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

There is no indication from the face of the Amended Complaint that a reasonably trained sheriff or correctional officer could have concluded that the Sentencing Order was

9

unenforceably void, required Black's immediate release from custody, or warranted further inquiry with the Court, particularly when viewed in the context of the governing statutory provision. It is difficult to fathom how a sheriff, following the black letter law of Virginia, could conclude that doing so violated Black's clearly established right, particularly when no Virginia court has ruled to that effect. *See Anderson*, 483 U.S. at 640.[5]

Based on the foregoing analysis, the Motions to Dismiss will be granted, and the Amended Complaint will be dismissed with prejudice as to all Defendants.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 15, 2018
Richmond, VA

---

[5] In identifying the controlling established law, this Court must examine decisions of the Supreme Court, the Fourth Circuit Court of Appeals, and the highest court of the state in which the case arose. *Booker*, 855 F.3d at 538–39. If none is available, this Court must turn to a consensus of persuasive authority from other jurisdictions. *Id.* Here none exists with respect to Sheriff Woody's execution of the Circuit Court's Order.